IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BEATRICE CONNER,                )
                                )
            Plaintiff,           )
                                )
       v.                        )    1:10CV415
                                )
CAROLYN W. COLVIN,[1]            )
Commissioner of Social Security, )
                                )
            Defendant.           )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Beatrice Conner ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed her application for Disability Insurance Benefits ("DIB") on April 26, 2007, alleging a disability onset date of June 29, 2006. (Tr. at 55, 98-100.)[2] Plaintiff's

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #7].

application was denied initially (Tr. at 57-60) and upon reconsideration (Tr. at 64-66). Thereafter, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). (See Tr. at 67.) Present at the hearing, held on July 29, 2009, were Plaintiff, her attorney, and a vocational expert ("VE"). (Tr. at 11.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 23) and, on April 2, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since June 29, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
> . . . .
>
> 3. The claimant has the following severe impairments: carpal tunnel syndrome bilaterally status-post release surgical procedures and status-post right ulnar nerve transposition at the elbow (20 CFR 404.1520(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to frequent handling and

2

> fingering bilaterally, occasional climbing of ladders and no concentrated exposure to hazards such as moving machinery or unprotected heights. In addition, the claimant is limited to semi-skilled work.

(Tr. at 13-14.)

The ALJ determined that Plaintiff was "unable to perform any past relevant work." (Tr. at 21.) However, considering Plaintiff's age and education, along with the above findings regarding residual functional capacity ("RFC"), the ALJ ultimately determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 22.) He therefore determined that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 23.)

## II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere

scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security
(continued...)

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[3] (...continued)
Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-
(continued...)

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: "carpal tunnel syndrome bilaterally status-post release surgical

---

[4] (...continued)
related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

procedures and status-post right ulnar nerve transposition at the elbow." (Tr. at 13.)  The ALJ found at step three that these impairments did not meet or equal a disability listing.  Therefore, Plaintiff's RFC was assessed, and the ALJ determined that Plaintiff only could perform semi-skilled, light work with further restrictions.  Based on this determination, the ALJ determined under step four of the analysis that Plaintiff could not return to her past relevant work, but he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled.

Plaintiff styles her brief as raising a single issue, namely whether substantial evidence supports "the Commissioner's [step three] determination that Plaintiff did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Pl.'s Br. [Doc #10] at 3.)  However, the body of Plaintiff's brief instead raises two challenges to the ALJ's treatment of the medical opinions of Dr. Stephen Furr, an orthopedic surgeon who treated Plaintiff between June 2006 and June 2008. (Pl.'s Br. at 4.)  Plaintiff first argues that "[t]he permanent sedentary restrictions assigned by Dr. Furr as of June 26, 2008, when plaintiff was fifty (50) years old, constituted an award of benefits pursuant to Rule 201.10." (Id.)  Alternatively, she contends that "the new evidence from Dr. Furr which was dated August 24, 2009 and timely submitted to the Appeals Council on or about January 22, 2010, materially altered the record to the extent that the plaintiff should have been awarded benefits pursuant to 20 CFR 404, Subpart P, Appendix 1, Sections 1.00 and 11.00 or the matter remanded for a new hearing to evaluate the claim in concert with the new evidence submitted." (Id.)  Plaintiff is mistaken on both counts.

7

As a preliminary issue, the Court notes that the ALJ heavily discounted Dr. Furr's opinions in his decision and described in great detail his reasons for doing so. (Tr. at 20-21.) The treating physician rule, 20 C.F.R. §§ 404.1527(d), generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment. Nevertheless, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2)-(4) and 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178.

Here, the decision first pointed out that, under 20 C.F.R. § 404.1527(d), Dr. Furr's opinions as to the ultimate issues of disability and RFC were entitled to no special significance. (Tr. at 20, n.5.) The ALJ then noted significant internal inconsistencies between Dr. Furr's several opinions, particularly his reports that Plaintiff was "'totally disabled' from June 20, 2006 through January 9, 2008 but was nonetheless capable of fingering, handling and lifting and carrying up to 20 pounds occasionally bilaterally," the latter description being consistent with light work. (Tr. at 20, n.6.); see also 20 C.F.R. § 404.1567. On June 26, 2008, Dr. Furr offered yet another opinion, this time assigning Plaintiff permanent sedentary work restrictions. (See Tr. at 364.) The ALJ also found Dr. Furr's opinions inconsistent with the opinions of other treating physicians, including Dr. Gramig, who found that the surgical procedures recommended by Dr. Furr were unwarranted, and with objective clinical findings, which showed "no significant

8

abnormalities on repeat nerve conduction studies, mild degenerative changes in the cervical spine, no advanced triggering or locking[,] and no evidence of myelopathic or radicular symptoms." (Tr. at 20.)

Plaintiff's arguments make no direct challenge to the ALJ's above findings and instead appear to ignore them completely. By contending that "[t]he permanent sedentary restrictions assigned by Dr. Furr as of June 26, 2008, when plaintiff was fifty (50) years old, constituted an award of benefits pursuant to Rule 201.10" (Pl.'s Br. at 4), Plaintiff erroneously suggests that the Commissioner was required to accept the RFC opined by Dr. Furr. Again, a claimant's RFC is an issue reserved to the Commissioner, and substantial evidence supports the ALJ's decision to afford little weight to Dr. Furr's assessment thereof.

In addition, the Court notes that Plaintiff does not challenge the ALJ's ultimate RFC determination, which found Plaintiff capable of light work with further, non-exertional limitations, or the vocational testimony, which, based on that RFC, identified jobs Plaintiff could perform in accordance with step five. Instead, she argues that the ALJ should have applied Rule 201.10, which would have lead to a finding of disabled under the "grids." In considering this contention, the Court notes that at step five, if a plaintiff can perform the full range of work within one of the exertional categories defined by 20 C.F.R. § 404.1567, i.e., sedentary, light, medium, heavy, or very heavy, the ALJ may apply the medical-vocational guidelines, contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish that claimant's vocational ability. See Heckler v. Campbell, 461 U.S. 458 (1983). In the present case, "[t]he Commissioner concedes that if Plaintiff possessed the RFC to perform only sedentary work, the Grid Rules

would direct a finding of disabled due to her age and lack of past sedentary work experience." (Def.'s Br. [Doc. # 12] at 16.) However, as set out above, substantial evidence supported the ALJ's undisputed finding that Plaintiff retained the RFC to perform a reduced range of light work. As such, the grid rules regarding sedentary work were inapplicable, and the ALJ correctly consulted a vocational expert in making the determination at step five.

Plaintiff next contends that "the new evidence from Dr. Furr which was dated August 24, 2009 and timely submitted to the Appeals Council on or about January 22, 2010, materially altered the record to the extent that the plaintiff should have been awarded benefits pursuant to 20 CFR 404, Subpart P, Appendix 1, Sections 1.00 and 11.00 or the matter remanded for a new hearing to evaluate the claim in concert with the new evidence submitted." (Pl.'s Br. at 4.) The Fourth Circuit has expressly held that the courts must "'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record,'" Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (citing Wilkins v. Sec., Dept. of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). In Meyer, the Fourth Circuit noted that under the applicable regulations, on appeal of the ALJ decision to the Appeals Council, claimants may submit additional evidence, and the Appeals Council will consider the evidence if it is "new and material evidence" that "relates to the period on or before the date of the administrative law judge hearing decision." Meyer, 662 F.3d at 704-705 (citing 20 C.F.R. § 404.970(b)). The Appeals Council then evaluates the entire record and may grant the request for review or, after considering all of the evidence including the new evidence allowed, deny the request for review. However, even where the Appeals Council denies the request for review,

the new and material evidence considered by the Appeals Council is considered by the Court in reviewing the record as a whole. Meyer, 662 F.3d at 704.

Notably, "the regulations do not require the Appeals Council to articulate its rationale for denying a request for review," even when it rejects new, material evidence in doing so. Meyer, 662 F.3d at 705-706. This "lack of . . . additional fact finding does not render judicial review 'impossible' -- as long as the record provides 'an adequate explanation of the Commissioner's decision.'" Id. at 707 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (internal brackets omitted)). Accordingly, the Fourth Circuit has affirmed in cases where, after reviewing new evidence, substantial evidence supported the ALJ's findings. Meyer, 662 F.3d at 707 (citing Smith v. Chater, 99 F.3d 634, 638-39 (4th Cir. 1996)). "Conversely, when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record, [the Fourth Circuit has] reversed the ALJ's decision and held that the ALJ's denial of benefits was 'not supported by substantial evidence.'" Meyer, 662 F.3d at 707 (citing Wilkins, 953 F.2d at 96). However, where new evidence competes with the evidence underlying an ALJ's decision, a situation arises in which "no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. at 707. Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the Court "must remand the case for further fact finding" in such an instance. Id.

In the present case, a review of the record as a whole reveals that the additional medical opinion submitted by Dr. Furr clearly fits the first of the three categories above. Although dated

11

August 24, 2009, this statement is, in fact, based on Dr. Furr's last examination of Plaintiff on June 26, 2008. (Tr. at 381-82.) As such, the opinion contained within it, i.e., that Plaintiff's symptoms are debilitating and prevent her gainful employment, does not differ from the opinions offered by Dr. Furr on June 26, 2008, or during the approximately two years prior to that date. (See Tr. at 361-62, 373, 377.) The ALJ specifically considered these opinions by Dr. Furr but gave them little weight, for the reasons discussed at length above. Substantial evidence thus supports the ALJ's findings, regardless of the inclusion of this "new" evidence in the analysis.

Finally, the Court considers Plaintiff's contention that substantial evidence fails to support "the Commissioner's [step three] determination that Plaintiff did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Pl.'s Br. at 3.) Through step four of the SEP, Plaintiff carries the burden of production and proof. Hunter, 993 F.2d at 35. Thus, to demonstrate that substantial evidence failed to support the ALJ's decision at step three, Plaintiff must point to specific evidence that her impairments did, in fact, meet or equal all of the specified medical criteria for the relevant listings. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Given the failure of Plaintiff's underlying challenge regarding additional evidence, she is left without any evidence supporting her step three argument, let alone the specific evidence required by the Social Security Act. In fact, Plaintiff even fails to specify which listings allegedly encompass her impairments beyond the general categories of Sections 1.00 and 11.00. Accordingly, her step three challenge must fail.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 7th day of February, 2014.

/s/ Joi Elizabeth Peake
United States Magistrate Judge